KROLIK v. KACZMAREK.

1. FRAUDULENT CONVEYANCES—BULK SALES LAW—PURPOSE.
    The purpose of the "Bulk Sales Law" (2 Comp. Laws 1915, §§ 6346-6348) being to protect creditors, a sale made in violation thereof is void only as to creditors; being valid as between the seller and buyer.

2. EQUITY—FRAUDULENT CONVEYANCES—BULK SALES LAW, SALE IN VIOLATION OF EQUITIES BETWEEN BUYER AND SELLER—"CLEAN HANDS."
    Where the sale of a stock of goods sold in violation of the "Bulk Sales Law" failed by reason of the same being taken to satisfy the creditors, the seller could not hide behind the statute and thus avoid liability to the buyer, and the court of equity will not permit the seller in such case to retain the purchase price; the doctrine of "clean hands" having no application.

Appeal from Wayne; Tappan (Harvey), J., presiding. Submitted June 3, 1919. (Docket No. 21.) Decided December 23, 1919.

Bill by Henry A. Krolik and others, copartners as A. Krolik & Company, against Joseph Kaczmarek and Valentine Adamaszek to set aside a sale of goods in violation of the bulk sales law. Defendant Adamaszck filed a cross-bill to set aside the assignment of a land contract and for the cancellation of a note. From a decree granting the prayer of the cross-bill, defendant Kaczmarek appeals. Affirmed.

*Sol. Blumrosen,* for appellant.

*L. C. Turek,* for appellee.

STONE, J. This case presents a controversy between the defendants upon an issue presented by the cross-bill of the appellee against the appellant. On

On remedy of creditors where sale is made in violation of bulk sales law, see notes in 39 L. R. A. (N. S.) 374, and .L. R. A. 1916B, 974.

April 13, 1917, the appellant was the owner of a stock of goods and fixtures located in a store at 435 Forest avenue east in the city of Detroit. The appellee and his wife owned an equity in a certain land contract covering land and premises described in the pleadings and decree herein. The appellant, a few days before the above date, agreed with appellee to exchange said stock of merchandise and fixtures for the equity which appellee and his wife had in said land contract. An inventory was made of the stock of merchandise and fixtures, and a balance was struck by which the appellee gave to the appellant a sixty-day promissory note for the sum of $541, and appellee and his wife transferred by assignment their equity in the land contract to appellant.

The appellant executed, on said April 13, 1917, a bill of sale of said stock of merchandise and fixtures to said appellee, which contained the following provision:

"And the said party of the first part, for himself, his heirs, executors and administrators, does covenant and agree to and with the said party of the second part, his executors, administrators and assigns, to warrant and defend the sale hereby made of said property, goods and chattels, unto the said party of the second part, his executors, administrators and assigns, against all and every person or persons whatsoever, and agrees to pay all debts to whomsoever they may be due, up to this day, on said stock, and which debts amount to about $960.00."

In this sale and transaction the parties thereto wholly ignored, and did not in any respect comply with the terms of the statute known as the "bulk sales law" (2 Comp. Laws 1915, §§ 6346-6348). The appellee took possession of the stock of goods and fixtures, and handled the same until this suit was instituted. The appellant took possession of the said real estate. At the time of the said sale and exchange,

the appellant was indebted to Henry A. Krolik & Company, plaintiffs herein, in the amount of $430.

On May 8, 1917, the plaintiffs instituted this suit and filed their bill of complaint, because of the violation of the "bulk sales law" by defendants, and a receiver was appointed. All parties, as appears by the record, conceded that the claim of the plaintiffs was well founded, and other creditors of the appellant joined in the suit, and debts were proved aggregating approximately $1,100. There was a sale of the stock by the receiver.

At first a default was entered against the appellee for failure to answer the bill of complaint. Later, and after the sale by the receiver, the default was set aside and appellee was given the right to file a cross-bill against the appellant. In his cross-bill appellee demanded and prayed for the return of his equity in the land contract and cancellation of the said note. Appellant answered the cross-bill of appellee, among other things, denying that the latter was entitled to any relief. At the hearing and at the conclusion of the testimony, the court, by its decree, among other things, ordered the said promissory note to be canceled and to be delivered to the court for cancellation, and also ordered the assignment of the land contract to be canceled, and declared null and void, and directed the appellant to re-assign said land contract to appellee upon payment of $220.98.

From such parts of the decree as are above recited, and as affect the appellant, he has appealed. So it appears that this appeal affects only the appellant and appellee, and no attempt is here made to affect the standing of the plaintiffs in the case.

The learned circuit judge seems to have been of the opinion that the appellant was responsible for the condition of the parties, and he sought to place them *in statu quo*. The only question possessing any merit

that is presented by the appellant as a reason for reversal is that the case is controlled by the case of *Farrar* v. *Lonsby Lumber & Coal Co.,* 149 Mich. 118, and that the parties having acted in violation of law, the appellee does not come into court with clean hands and hence cannot prevail. It should be borne in mind that the instant case presents a situation of the entire failure of consideration for the sale. The whole trend of our decisions, as well as the decisions of other courts construing statutes similar to our bulk sales law, is to the effect that the purpose of this and similar acts is to protect creditors; and that a sale made in violation of the statute is void only as to creditors. *Spurr* v. *Travis,* 145 Mich. 721 (9 Ann. Cas. 250); *Musselman Grocer Co.* v. *Kidd, Dater & Price Co.,* 151 Mich. 478; *Squire* v. *Tellier,* 185 Mass. 18 (69 N. E. 312).

Such sale as between the seller and buyer is valid; and if the seller has been guilty of any fraud to the injury of the buyer, or if there has been an entire failure of the consideration, the seller cannot hide behind the statute and thus avoid liability to the purchaser.

What was held in *Farrar* v. *Lonsby Lumber & Coal Co., supra,* is that a sale void as to creditors cannot, as between the parties, be made to operate to give the vendee a lien for the money he has paid. The remedy sought in that case was against the property (or the proceeds of it) sold in violation of the bulk sales law. In the case at bar, the remedy sought by the vendee in no way affects the rights of creditors of the seller of the goods, but is aimed at a recovery from the seller of the property given in exchange for the goods.

Here, confessedly, is a void sale as to creditors of a stock of goods and the vendee gave the vendor a note and a land contract in payment. Creditors of the vendor have successfully attacked the sale. The

vendee gets nothing. The goods, or their value, go to pay the vendor's debts, and he also profits by the note and land contract which he received from the vendee. Assuming that in this proceeding, all parties being before the court, the court has power to settle and adjust all rights, it seems to us inequitable to deny to appellee what the court below gave him, cancellation of his assignment of the land contract and return of his promissory note. The question lies wholly between the vendor and the vendee, affects creditors not at all, and the doctrine that one must come into a court of equity with clean hands in order to obtain relief has, in our opinion, no application. As we have said, it would be most inequitable to permit the vendor to retain the purchase price of the stock of goods while subjecting the stock to the payment of his debts.

The decree below is affirmed, with costs to the appellee.

BIRD, C. J., and MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.

The late Justice OSTRANDER took no part in this decision.